Mr. Conway, you may proceed Good morning, you may please record Sean Conway on behalf of the Milton Township Assessor Chris LeVan in his individual capacity. This case was before the court on review of the District Court's denial of Assessor LeVan's request for qualified immunity asserted in his motion to dismiss the Deputy Assessor's First Amendment political retaliation claims. We are requesting that the court reverse the determination of the District Court in this regard. The Supreme Court has established a two-step qualified immunity analysis. The first step being whether the alleged conduct in the claim implicates a violation of the Constitution at all. The second step being whether the alleged violation was clearly established at the time of the defendant's alleged conduct. So Mr. Conway, let me put on the table what I'm concerned about for your position. This was on a motion to dismiss, which means that we have to take the facts as alleged in the complaint and accept those as, at least for the time being, obviously, the facts. And those facts show that these Deputy Assessors are performing ministerial work. I mean, deciding what the fair cash value of property is is not something, hopefully, that involves discretion. You're supposed to go out there and collect data and put it into a computer, and it's very mechanical. They're not chief deputies. They're just Deputy Assessors. And so it just seems to me this qualified immunity effort is premature. It might look different at the summary judgment stage. It might certainly, what really goes on as a matter of fact at this level in the county, or sorry, in Milton Township, might look different at a trial. But as now before us, why aren't Judge Tharp and Judge Dow correct? Judge, your points are very well taken. Our argument on appeal is that the duties of the Deputy Assessor are set forth in the Illinois Revenue Code. And as the Seventh Circuit cases are clear, the court looks first to statutes, ordinances, job descriptions to determine the powers and duties of the position involved in the case. And so when we look at the Illinois Revenue Code, we know that the elected assessor has the power and authority to appoint deputies that he or she deems suitable. But isn't it the case that under Illinois law, the Deputy to make assessments of the value of real property in the township, which is a professional, certainly you have to have a brain in your head to do that, but it's not a policymaking position. I don't see where the policymaking comes in when you're sent out to say, here's a property at such and such an address within Milton Township. It just seems to me to be one of those professional things. I'm thinking of Davis against Ackerman, for example. But it just doesn't seem to me like something that is a policy decision that would fall within the political patronage line of cases. Judge, what I would liken this position to is the position of the Assistant State's Attorney in the Levis case. Oh, but I think it's quite different from the position of the Assistant State's Attorney, because Assistant State's Attorney have a huge amount of discretion to decide what cases to take to the grand jury, what to decide. Well, we've done enough investigation. Our resources simply won't permit going further on this. Maybe one State's Attorney has a priority for gang crime and another one is concerned about domestic violence. I mean, there's a huge amount of discretion in the Assistant State's Attorney's office, and I don't see anything close to that in these deputy assessors. Well, Judge, the assessor and the deputies have a significant amount of discretion in determining the fair cash value of properties set forth in the statute 9-155. I don't understand that. I don't understand why. They have to make an independent assessment and an evaluation, and they have to come up with an assessment. The statute tells them you come up with fair cash value, then you assess at 33 and a third percent, I believe is what it says. But they're not making budgets. They're not directing attention in one place or another. They're helping the township get its money. They're figuring out what the real value of property is. And Judge, when the deputies make the assessments, or for that matter when the assessor makes the assessment, they're making the assessment not on behalf of a particular property owner, but they are making the assessment for the general public and for the benefit of the general public. Well, of course, but they don't have the power to prepare budgets. They don't automatically become the assessor when the position is vacant. They're really quite different. Actually, these cases are always sort of funny because everybody's saying, oh, you know, my job is, you know, I could be a robot and still do my job. And the other side is saying, no, you run the world, and we have to figure out what's really going on. But taking the facts as alleged here in the complaint and reading the statutes, that's our posture. And it seems to me when somebody is purely ministerial, then they're not subject to political firing. And Judge, I would point the court to the Cutmore case we cited in the papers, where it did an analysis of the relationship between the assessor and the deputy. And the Illinois Supreme Court has held that that position is not ministerial, that it is not, the position is not simply a clerk. And I think that's underlined by the statutory scheme where the deputies serve at the will and pleasure of the township, elected township assessor. But you're not making the argument, are you arguing that every person who works in a state of Illinois public office whose employment is at will is a political appointee? That would be a very aggressive position to take. I'm not sure that any law would support that. No, Judge. I do think, though, that that's a significant factor. I mean, that was a factor that was... I'm suggesting maybe it's not a significant factor, because in the United States, employment at will is the default employment relationship. Sometimes people are union members, or sometimes they have other protections, but typically people have employment at will. Yes, and my response is, you know, there are certain government positions, like the state's attorney, like the elected assessor, where the exercise of the profession, the profession like in the example of the state's attorney going into court and representing the people of Illinois, it goes hand in hand with the implementation of policy. And that's the same situation with the elected assessor and the deputies. So what policy did you describe that the deputy assessors were implementing? Well, when the deputy assessors make their assessments, they have significant discretion and judgment in making that assessment. We cited a line of Illinois cases that show there are several assessment approaches that the deputy can use to determine the fair cash value of property. And so, again, the deputy has a significant discretion and is making, quite frankly, government decisions, not just providing input to the principal, but making the government decision where there is clearly room for principal disagreement, as between deputies, as between assessors. Okay. I'm going to ask you to stop now and save the rest, but I'll give you a little extra time for rebuttal because I asked you a lot of questions. Well, I have one other question just before. I'm sorry about dragging it out, but there is some difference in the neighborhoods that they're going to assess, isn't there? Absolutely, Judge. And that's one of... I didn't see that argued, but yeah, if the designation by the assessor puts a deputy in a certain neighborhood, maybe. It could be a low-rent neighborhood. It could be a very high-rent neighborhood, just to use that example. And there would be a lot of difference in the values of the property. That's the only thing I can think of that might distinguish these one from another. Otherwise, I don't see any policymaking, but we haven't argued that. Maybe that will come up later. Absolutely, Judge. And what I would say is, if I could just create an illustration for the court to illustrate our point here. Let's say you have a challenger, a candidate challenging the incumbent assessor. And their campaign platform is that commercial properties in that particular jurisdiction are assessed un-uniformly or are assessed too high. And if they're elected into office, they're going to take a close look at those commercial property assessments and make sure they're in line with market conditions, make sure they're uniform as required by the Illinois Constitution. Let's say that candidate is ushered into office on that platform. It is not a stretch to see that the elected assessor would discuss with the newly appointed deputies that, listen, you know my campaign promise. I want you to get out in the field, look at these commercial properties. I want you to make sure that the assessments on these properties are uniform, that they're in line with the market conditions. And I want you to use any and all recognized valuation approaches. I'm going to let you be professionals in that regard, but you know my campaign promise. Okay, I think we have the gist of this. I think we have the gist of your example. As I said, I'll give you a minute to rebut afterwards because of the questions. But now we'll turn to and hear from him. Good morning. May it please the court. My name is Keith Hanson together with Brad Faber. I have the privilege of representing six individuals who previously worked at the Milton Township Assessor's Office. It is our position that Judge Dow correctly denied the Senate's motion to dismiss and directly concluded that the qualified immunity argument was not yet right because there were significant factual questions and that the record needed to be more fully developed. In fact, that leads us to our first argument, which is really that the court lacks jurisdiction to hear this appeal because there was never a final order issued. As was pointed out earlier this morning in another case, there was no 54B language that was used in the district court. We don't need that. Qualified immunity appeals, which this is, normally fall under the collateral order doctrine because if Judge Dow should have granted qualified immunity, that would be it for Mr. Levan. So if you want to challenge jurisdiction, you have to take on Cohen against beneficial life and Barron's against volunteer. Our position simply is Judge specifically found that the record was not properly or fully developed at that point, that the court was obligated to take all of the plaintiff's allegations as true at that point and give the plaintiff all reasonable inferences, and that the judge denied the motion to dismiss without prejudice to those arguments being re-raised at a later time. As this court has pointed out repeatedly since Alvarado and others, qualified immunity is rarely appropriate when to be granted on a motion to dismiss, particularly where there are factual issues involved. In this case, the plaintiffs have articulated in great detail the nature of their political support for the former assessor. They have articulated in detail and in fact included the affidavit of the declaration of the former assessor as to what they were and were not empowered to do. The interesting thing I think about Mr. Conway's example that he gave at the end of his argument is that it really supports our position. In there, he's talking about an elected official being ushered into office having made campaign promises, and it is the elected official then who is giving the direction to the deputy assessors to go out and revisit the valuation to make sure things are uniformly assessed. But that's where the discretion ends, because when that deputy assessor then goes out into the field and views a particular piece of property, his role is formulaic. It is not discretionary. He's not setting policy for the office, although there may be a limited amount of decision-making that he or she engages in in that process. One of the interesting things about this case is that we start with these positions, townships are a creation of the legislature. So we really start with Dillon's rule in that the township officials, and in this case the deputy assessors, only have those specific entitlements and authorities as have been granted unto them by the legislature. And in this case, unlike Cutmore, which deals with a Cook County assessor, and unlike the Klein case that dealt with the Indiana statute, we do not have any pronouncement from the legislature that authorizes deputy assessors to engage in policymaking-type functions. And in the absence of that, the plaintiff's allegations control, at least at this stage, until a more specific or a more detailed factual record can be developed. I think that the you're not limited to one qualified immunity appeal. You can appeal from a denial of qualified immunity at the motion-to-dismiss stage, you can appeal from a denial of qualified immunity at the summary judgment stage, and so on. So you would concede that maybe at some later point the assessor could raise qualified immunity again. I think that's exactly what Judge Dow ruled. The point is premature at this stage, given the procedural posture of the litigation, the fact that we were on a 12B6 motion, and the fact that there was, in the district court's view, an incomplete factual record to decide those issues. Again, I would emphasize the test is not whether the deputy exercised discretion in performing some routine task or duty, but whether the deputy has discretionary authority to set the office policy. In other words, is the deputy assessor the alter ego of the elected official, the assessor himself or herself? And there simply is no evidence in the record to suggest that they are. Certainly the defendant has not offered any such evidence. They filed a motion to dismiss and attempted to make a legal argument to insulate the assessor. It seems almost in reading the appellate briefs in this case that what the township and the assessor are attempting to do is really through the rubric of a qualified immunity appeal to have the court on this appeal review Judge Dow's decisions regarding the sufficiency of the complaint as a whole. And that, of course, would be improper to do. We believe that the appeal is premature, that it should be dismissed, and that the court should affirm the district court's determination that qualified immunity does not apply, at least at this stage of litigation, and that the plaintiff has set out both a constitutional violation and that the First Amendment rights were clearly established as a matter of law based upon 50 or more years of case law, establishing that the political decision making and political retaliation are inappropriate and that political support or affiliation are not an appropriate prerequisite for employment or the proper basis for an employment decision, unless there's a policymaking exception which does not apply here. Thank you. Thank you very much. I'll give you a minute for rebuttal, Mr. Conway. Thank you, Judge. Just briefly, I do want to cover the second step, the qualified immunity analysis, the clearly established law step. What we know at this stage in the case, at the pleading stage, is that this is a case of first impression in the Seventh Circuit involving this particular government position, whether or not it's a policymaking position. We know, as we covered, that this position is that you serve at the will and pleasure of the assessor. The deputy assessors haven't pointed to any analogous case that would or should have put Chris LeVan on notice that discharging the deputies implicated a violation of the First Amendment. We also have divergent rulings from the two federal judges in the same case, Judge Dariaghi and Judge Dow, on whether or not this position is a policymaking position under Illinois law. In looking at the Moss case we cited in the papers, I do think that serves as a good model for this court to resolve this case on qualified immunity at this stage, because in Moss, the court determined that it wasn't very clear from the policy description and the evidence whether the government position was a policymaking position. In fact, the court said this was a murky area of the law. But based on all of those factors that I just listed, the court determined that qualified immunity must apply. All right, so we need to wrap up now, Mr. Conway. Thank you, Judge. For all these reasons, both steps of the qualified immunity analysis should be resolved in favor of Assessor LeVan, and we request that this honorable court reverse the ruling of the district court in this regard. Thank you. All right, thank you very much. Thanks to both counsel. The court will take this case under advisement.